SUSAN D. GRAHOVAC, APPELLANT, V.
MICHAEL G. GRAHOVAC, APPELLEE.
680 N.W.2d 616

Filed June 8, 2004.   No. A-03-015.

Charles O. Forrest, of Dwyer, Smith, Gardner, Lazer, Pohren, Rogers & Forrest, for appellant.

Thomas J. Garvey, of Hascall, Jungers & Garvey, for appellee.

IRWIN, Chief Judge, and SIEVERS and CASSEL, Judges.

SIEVERS, Judge.

## INTRODUCTION

Susan D. Grahovac appeals from the decision of the district court for Sarpy County, Nebraska, on Michael G. Grahovac's petition to modify a decree of dissolution as to child support and alimony. The district court granted the modification and reduced Michael's child support and alimony obligations.

## FACTUAL AND PROCEDURAL BACKGROUND

Susan and Michael were married on April 2, 1983. The parties have two children: Ryan, born November 13, 1989, and Rachel, born October 16, 1991. A decree of dissolution of marriage was entered on January 15, 1999, and a property settlement agreement was incorporated as part of the decree. The parties agreed Michael would pay alimony of $675 per month for 84 months or until he paid $56,700.

At the time of the decree, Susan earned approximately $750 per month working at Methodist Hospital and Michael earned

approximately $100,000 per year working at Physicians Mutual Insurance Company (Physicians Mutual). The decree awarded Susan full custody of both children, with Michael's visitation being in accord with *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987). Michael was ordered to pay monthly child support of $1,550 for two children and $1,100 for one child. No child support worksheet was adopted by the trial court and attached to the decree.

Michael filed a petition for modification of the decree on April 15, 2002, to reduce child support and alimony because of a material change of circumstances. At the modification hearing, Susan's pay stub from her employer, Blue Cross Blue Shield, was submitted, showing her 2002 gross bimonthly earnings to be $1,262.50. Michael testified that he took "early retirement" from Physicians Mutual and that his employment there ended December 31, 2000. His severance package included 1 year's salary, $106,530, paid during 2001 according to his tax return. Michael was 58 years old at the time of the modification hearing. He testified that he had worked for Physicians Mutual for 31 years and that he had attended college for 2 years.

Michael testified that after retiring, he hired an employment consultant, but that he did not have any interviews or receive any offers until July 2002, when he obtained a job as a courier with Capital Express. His gross income with Capital Express is approximately $650 to $800 every 2 weeks. He is considered an independent contractor, so he pays his own expenses, including gas, insurance, and vehicle payments. Michael also receives a pension of $1,860 per month from Physicians Mutual. Michael's 2001 income tax return shows that in addition to his severance package, he also had income of $49,452 from a pension. Michael testified that his 2001 disposable income was approximately $131,000.

Michael testified that he has had a problem with alcohol and that at the time of the decree, he was a "practicing alcoholic." Further, he admitted that he has received inpatient treatment for alcoholism in the past but that since January 1, 2001, he has not had any inpatient or outpatient treatment. Michael said that he has attended Alcoholics Anonymous for 10 years and has been sober since March 1, 2002. Summarized, the evidence shows that

Michael's drinking was a significant factor in both Physicians Mutual's decision to offer him early retirement and his decision to accept the offer.

The trial court found that both parties had a "substantial change" in income that constituted a material change in circumstances, which justified a reduction in Michael's child support and alimony obligations. Consequently, the court reduced child support to $785 per month for two children and $550 per month for one child. Michael's alimony payments were reduced to $25 per month for the remaining 48 months of the original 84 months of alimony as set forth in the decree. Susan appeals.

## ASSIGNMENTS OF ERROR

Susan asserts, reassigned and restated, that the trial court erred in (1) finding a material change of circumstances justifying a downward modification of alimony, (2) finding a material change of circumstances justifying a downward modification of child support, (3) finding that the alimony was modifiable, and (4) conducting an ex parte review of prior proceedings without notice to the parties' counsel.

## STANDARD OF REVIEW

Modification of a dissolution decree, child visitation, and amount of child support and alimony are matters entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. See, *Crawford v. Crawford*, 263 Neb. 37, 638 N.W.2d 505 (2002); *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997); *Lawson v. Pass*, 10 Neb. App. 510, 633 N.W.2d 129 (2001).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Crawford v. Crawford, supra.*

## ANALYSIS

*Alimony.*

Susan asserts that the trial court erred in finding that there was a material change in circumstances to justify reducing

the amount of alimony as stated in the decree. An award of alimony may be modified or revoked if the moving party can show good cause. See *Pope v. Pope, supra.* In an action for modification of alimony, good cause is demonstrated by a material change in circumstances, but any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order. *Id.* Whether good cause exists for modification of an order for alimony depends upon the circumstances of each case. *Krause v. Krause,* 9 Neb. App. 774, 619 N.W.2d 611 (2000). An appellate court does not determine whether it would have made the same modification as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Id.* The trial court in the instant case determined that both parties had incurred a substantial change in income compared to their respective incomes at the time of the original decree. Thus, the court reduced the amount of alimony to be paid from $675 per month to $25 per month. Susan contends that Michael failed to show good cause, because the reduction in his income was attributable to his alcoholism.

In *Lambert v. Lambert,* 9 Neb. App. 661, 617 N.W.2d 645 (2000), the trial court modified the divorce decree by reducing the father's child support and alimony obligation, even though his reduction of income resulted from his employment resignation precipitated by a failed random drug test. He had failed several random drug tests given by his employer, and after the third failed test, his employer offered him the option to enroll in an Employee Assistance Program or be terminated. He did not enroll in the program and was subsequently given the opportunity to resign or be terminated. He resigned and then filed a petition to modify the divorce decree to reduce his child support and alimony obligations. The district court granted his motion for modification and reduced the child support and alimony. The mother appealed, asserting that the father did not demonstrate good cause to reduce the alimony and that there was no material change in circumstances warranting a reduction in child support.

Relying on *Pope v. Pope,* 251 Neb. 773, 559 N.W.2d 192 (1997), we found that the trial court erred in reducing the father's

alimony obligation in *Lambert v. Lambert, supra*. In *Pope*, the Nebraska Supreme Court said that a petition for the modification or termination of alimony will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. While the financial condition of the father in *Lambert* had obviously changed, we found that such change was his fault or constituted his voluntary wastage of his talents because he chose to use marijuana. We stated that he used marijuana despite "knowing that it would put his livelihood in jeopardy and knowing that losing his job would affect his ability to meet his court-ordered financial obligations." *Lambert v. Lambert*, 9 Neb. App. at 668, 617 N.W.2d at 650. Therefore, we found that his conduct was blameworthy and that he did not demonstrate good cause to warrant a reduction in alimony payments, and we reversed the decision of the trial court.

In the present case, the trial court reduced Michael's child support and alimony obligations, based on a reduction in his income and an increase in Susan's income. Similar to the situation in *Lambert*, in this case, Michael's resignation or "early retirement," which reduced his income, was due to his own behavior—his alcoholism and his refusal to secure effective treatment. Michael admitted to being an alcoholic and said that he had had a conversation with his boss relating to his alcoholism, in which conversation his boss told him that "unless something big changes in your life, you know, two months from now I am going to have to terminate you." That his boss would tell him this likely should not have been a surprise, given that in May 1998, Physicians Mutual had offered Michael treatment, which he accepted but which did not produce a long-lasting effect. Michael admitted that in January 1999, he was a "practicing alcoholic," and that he knew if he did not quit drinking, he could lose his job. Nonetheless, shortly before Michael's resignation, he went on a 2-week "binge" during which he never went to work. The record shows that "early retirement" and "resignation" are merely euphemisms for "fired for excessive drinking." Further, in the year after Michael left Physicians Mutual, he had income of over $155,000 but ran up credit card debts of $30,000 and did not go to even one job interview. He ultimately ended up as a courier earning $650 to $800 every 2

weeks. If this does not describe waste and dissipation of one's talents and abilities, to the obvious detriment of his family, we have a hard time envisioning what would.

Similar to the facts in *Lambert v. Lambert*, 9 Neb. App. 661, 617 N.W.2d 645 (2000), in this case, Michael's financial position has clearly changed, but only due to his own fault by his voluntary wastage and dissipation of his talents and assets. Michael knew that if he continued drinking, he would lose his job. Even though Michael also asserted that he retired because his boss told him that Physicians Mutual needed to "clear out some of the older, higher paid guys and bring up some young blood," it is apparent from the record that Michael's employment ended because of his continued drinking. Therefore, the reduction in Michael's income was not from good cause, and he is not entitled to any reduction on such basis. However, the trial court based the modification on a substantial change in both parties' incomes. Thus, we turn to the matter of the increase in Susan's income.

An increase in income is a circumstance that may be considered in determining whether an award of alimony should be modified. *Northwall v. Northwall*, 238 Neb. 76, 469 N.W.2d 136 (1991). However, a modification is only warranted when a change of circumstances is of a material and substantial nature and was not contemplated at the time of the decree. See *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985). Since the time of the decree in January 1999, Susan's income has increased from $750 per month (the record does not reveal if such amount was gross or net income) to a gross income of $2,735 per month in 2002. At the modification hearing, Susan testified regarding whether the parties contemplated her working full time at the time of the decree as follows:

Q. When the decree was entered in January of 1999, was part of the arrangement going to be that you would seek full-time employment?

A. I knew that I would have to go back to work full time, yes.

Q. And both parties knew that; is that correct?

A. Yes.

. . . .

Q. When the decree was entered . . . in January of 1999, were you working full time at that point in time?
A. No. . . .
Q. And at that point in time, it was anticipated that you were going to seek employment on a full-time basis at the highest rate you could find?
A. Yes.

Michael did not dispute this testimony. Further, the decree of dissolution provides that Michael would pay 80 percent of the monthly daycare expenses while Susan was working and 50 percent of the monthly daycare expenses while Susan attended college. This provision and the record, read as a whole, show that at the time of the decree, the parties anticipated that Susan would obtain full-time employment. Therefore, the trial court abused its discretion in finding that Susan's increased income constituted a material change of circumstances which justified in any way a reduction in the amount of Michael's alimony obligation.

Because we find that there was no good cause justifying modification of alimony, it is unnecessary to address Susan's last two assignments of error relating to alimony. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Russell v. Stricker*, 262 Neb. 853, 635 N.W.2d 734 (2001). We reverse the trial court's order reducing the amount of Michael's alimony obligation.

*Child Support.*

Susan also asserts that the trial court erred in finding a material change in circumstances to justify reducing Michael's child support obligation. A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. *Lambert v. Lambert*, 9 Neb. App. 661, 617 N.W.2d 645 (2000). It is well established that a "material change in circumstances" in modification of child support cases is analogous to the "good cause" standard articulated for modification of alimony. See *id.* See, also, *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997). We have already determined that Michael's diminished financial position was due to his own fault

or voluntary wastage and dissipation of his talents and assets. Thus, we find that Michael's income reduction cannot constitute a material change in circumstances for reduction in child support for the same reasons as we have articulated above concerning reducing alimony. See *Lambert v. Lambert, supra.*

Nonetheless, that does not end our inquiry. We still must determine whether Susan's increase in income, standing alone, justified a reduction in Michael's child support obligation. A rebuttable presumption establishing a material change of circumstances occurs when application of the child support guidelines results in a variation by 10 percent or more, but not less than $25, upward or downward, of the current child support obligation due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months. Nebraska Child Support Guidelines, paragraph Q.

In order to determine whether there was a 10-percent variation, we must complete a child support worksheet because there was not one attached by the trial court. Once again, we reiterate the importance of attaching a child support worksheet, since the trial court failed to do so for the original decree as well as for the modification order. See *Gallner v. Hoffman,* 264 Neb. 995, 1002, 653 N.W.2d 838, 844 (2002) (" 'trial courts must show the appellate courts, and the parties, that they have "done the math" ' "), quoting *Stewart v. Stewart,* 9 Neb. App. 431, 613 N.W.2d 486 (2000). At the time of the original decree in 1999, Susan was earning $750 per month. In 2002, her monthly gross income was $2,735. Because we have found that Michael's change in employment was not done in good faith, to calculate child support, we use Michael's income as stated in his 1999 tax return because it most closely reflects his income at the time of the decree. Michael's 1999 gross monthly income, based on his annual gross income of $99,788, was $8,315. According to the child support worksheets we have prepared and attached to our opinion as appendix A, Michael's monthly child support obligation is $1,376 for two children and $930 for one child. In comparing this to the $1,550 Michael was ordered to pay monthly for two children in the original decree, we find there has been an 11-percent decrease, which constitutes a material change in circumstances under the child support guidelines. The trial court

did not abuse its discretion in reducing the child support obligation. However, the court did abuse its discretion in the amount it ordered Michael to pay. Therefore, on remand, we instruct the trial court to adopt our child support worksheets (appendix A) and set monthly child support at $1,376 for two children and $930 for one child, effective May 1, 2002, given that the petition to modify was filed April 15, 2002.

## CONCLUSION

Because there was no good cause to justify a reduction in alimony, we find that the district court abused its discretion, and we reverse that decision of the district court. However, as to child support, we find that the trial court did not err in decreasing Michael's child support obligation but that it did err in calculating the amount to be paid. Therefore, we remand the cause to the trial court with directions to modify the decree, ordering Michael to pay monthly child support in the amount of $1,376 for two children and $930 for one child, retroactive to May 1, 2002.

AFFIRMED IN PART AS MODIFIED, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.

WORKSHEET 1

Grahovac v. Grahovac      **BASIC NET INCOME AND SUPPORT CALCULATION FOR TWO CHILDREN**

|  |  | MOTHER | COMBINED | FATHER |
|---|---|---|---|---|
| 1. | Total month income from all sources (except payments received for children of prior marriages and all means-tested public assistance benefits)* | 2,735.00 | | 8,315.00 |
| 2. | Deductions** | | | |
| | a.   Taxes*** | 180.97 | | 1,974.48 |
| | b.   FICA | 209.23 | | 569.76 |
| | c.   Health insurance **** | 0.00 | | 0.00 |
| | d.   Retirement | 109.40 | | 0.00 |
| | e.   Child support previously ordered for other children | 0.00 | | 0.00 |
| | f.   Regular support for other children | 0.00 | | 0.00 |
| | g.   Total deductions | 499.59 | | 2,544.25 |
| 3. | Monthly net income (line 1 minus line 2g) | 2,235.41 | | 5,770.75 |
| 4. | Combined monthly net income | | 8,006.16 | |
| 5. | Combined annual net income | | 96,073.90 | |
| 6. | Percent contribution of each parent (line 3, each parent, divided by line 4)***** | 27.9% | | 72.1% |
| 7. | Monthly support from table 1 | | 1,908.37 | |
| 8. | Each parent's monthly share for two children (line 7, times line 6, for each parent) | 532.84 | | 1,375.53 |

\*  Court will require copies of last 2 years' tax returns to verify "total income" figures and copies of present wage stubs to verify the pattern of present wage earnings, except where a party is claiming depreciation as a deduction from income, in which case a minimum of 5 years' tax returns shall be required. Income should be annualized and divided by 12 to arrive at monthly amounts.

\*\*  All claimed deductions should be annualized and divided by 12 to arrive at monthly amounts.

\*\*\*  Deductions for taxes will be based on the annualized income and the number of exemptions provided by law.

\*\*\*\*  The increased cost to the parent for health insurance for the child(ren) of the parent shall be allowed as a deduction from gross income. The parent requesting an adjustment for health insurance premiums must submit proof of the cost of the premium.

\*\*\*\*\*  In the event of substantial fluctuations of annual earnings of either party during the immediate past 3 years, the income may be averaged to determine the percent contribution of each parent as shown in item 6. The calculation of the average income shall be attached to this worksheet.

**Grahovac v. Grahovac**     **BASIC NET INCOME AND SUPPORT CALCULATION FOR ONE CHILD**

| | | MOTHER | COMBINED | FATHER |
|---|---|---|---|---|
| 1. | Total month income from all sources (except payments received for children of prior marriages and all means-tested public assistance benefits)* | 2,735.00 | | 8,315.00 |
| 2. | Deductions** | | | |
| | a.  Taxes*** | 180.97 | | 2,137.23 |
| | b.  FICA | 209.23 | | 569.76 |
| | c.  Health insurance **** | 0.00 | | 0.00 |
| | d.  Retirement | 109.40 | | 0.00 |
| | e.  Child support previously ordered for other children | 0.00 | | 0.00 |
| | f.  Regular support for other children | 0.00 | | 0.00 |
| | g.  Total deductions | 499.59 | | 2,707.00 |
| 3. | Monthly net income (line 1 minus line 2g) | 2,235.41 | | 5,608.00 |
| 4. | Combined monthly net income | | 7,843.41 | |
| 5. | Combined annual net income | | 94,120.90 | |
| 6. | Percent contribution of each parent (line 3, each parent, divided by line 4)***** | 28.5% | | 71.5% |
| 7. | Monthly support from table 1 | | 1,300.60 | |
| 8. | Each parent's monthly share for one child (line 7, times line 6, for each parent) | 370.68 | | 929.93 |

\*  Court will require copies of last 2 years' tax returns to verify "total income" figures and copies of present wage stubs to verify the pattern of present wage earnings, except where a party is claiming depreciation as a deduction from income, in which case a minimum of 5 years' tax returns shall be required.  Income should be annualized and divided by 12 to arrive at monthly amounts

\*\*  All claimed deductions should be annualized and divided by 12 to arrive at monthly amounts

\*\*\*  Deductions for taxes will be based on the annualized income and the number of exemptions provided by law

\*\*\*\*  The increased cost to the parent for health insurance for the child(ren) of the parent shall be allowed as a deduction from gross income  The parent requesting an adjustment for health insurance premiums must submit proof of the cost of the premium.

\*\*\*\*\*  In the event of substantial fluctuations of annual earnings of either party during the immediate past 3 years, the income may be averaged to determine the percent contribution of each parent as shown in item 6  The calculation of the average income shall be attached to this worksheet.