759 N.W.2d 710 (2008)
17 Neb. App. 279
Christi Marie MURPHY, appellant,
v.
Matthew Larue MURPHY, appellee.
No. A-08-007.
Court of Appeals of Nebraska.
December 2, 2008.
*712 Brenda J. Council and Amy L. Mattern, of Whitner Law Firm, P.C., L.L.O., Omaha, for appellant.
Christopher A. Vacanti, of Cohen, Vacanti, Higgins & Shattuck, Omaha, for appellee.
INBODY, Chief Judge, and MOORE, Judge.
PER CURIAM.
Christi Marie Murphy and Matthew Larue Murphy were divorced by a decree of the district court for Douglas County, Nebraska, entered August 25, 2006. Two children were born to the Murphys during the marriage: one born December 12, 1997, and the other born August 30, 2000. This appeal involves Matthew's request to modify his child support and alimony obligations because of a 50-percent reduction of earnings stemming from the loss of his employment as a Douglas County sheriff's deputy. The district court reduced Matthew's child support and alimony obligations, but Christi appeals and contends that such reduction was error because Matthew's loss of employment was the result of his "misconduct." We agree and, therefore, reverse.

*713 PROCEDURAL AND FACTUAL BACKGROUND
At the time of the dissolution, Matthew's employment as a deputy sheriff, together with part-time work as a security officer, provided an income of $70,000 per year. Christi was not then employed, nor has she been employed since the decree. Christi was awarded custody of the children, and Matthew was to pay child support in the sum of $1,209 per month for the support of the two children and $822 per month for one child. Additionally, Matthew was to pay Christi alimony in the amount of $600 per month beginning August 1, 2006, for 3 years; $450 per month from August 1, 2009, for 2 years; and $300 per month from August 1, 2011, for 2 years, for a total of $39,600.
The parties had substantial debt, which was divided between them by the original decree of dissolution. The only debt relevant in this proceeding was a Citibank credit card debt that Christi was ordered to pay in the approximate amount of $7,800. However, after the decree, Christi filed for bankruptcy and the Citibank debt was discharged by the U.S. Bankruptcy Court. Consequently, that creditor pursued Matthew, and he ultimately settled such debt by a payment of $4,300, for which he sought credit against child support via this modification proceeding.
Matthew had a 14-year career with the Douglas County sheriff's office, but in February 2006, an investigation concerning him occurred regarding an unreported accidental discharge of a weapon and K-9 training narcotics being found in his residence. As a result of that investigation, Matthew received a 45-day suspension and he signed an agreement placing him on a 1-year employment probationary status. Matthew admitted that such probationary status meant that further violations of department policies and procedures could lead to his termination. On January 4, 2007, the Douglas County sheriff provided a disciplinary hearing notice to Matthew recounting additional employment problems, including (1) June 2006, a negative personnel advisory for damaging a cruiser; (2) July 2006, two 3-day suspensions for failing to complete a required report and failing to place property into evidence; (3) November 2006, a negative personnel advisory for reporting late for work on more than one Sunday; and (4) January 2007, a negative personnel advisory after failing to report for work on Sunday, December 24, 2006. This notice provided for a disciplinary hearing to be held January 11, 2007, and set forth the details of the various rule violations and how such hearing would be conducted.
Matthew testified that the internal affairs investigation into his employment began shortly after the divorce case was filed, with Christi's calling the internal affairs department and submitting a letter and an affidavit. In her testimony, Christi denied Matthew's statements, and although she admitted that her previous attorney sent affidavits and letters to internal affairs, she testified she could not remember whether that was done with or without her consent.
A letter from the sheriff regarding the foregoing disciplinary investigation indicates that after the hearing, Matthew was "apprised of the options available to [him] in the event that [he was] terminated or if [he] resigned." The document recites that Matthew made the decision to resign his employment effective immediately, and at the bottom of the letter, it states: "I hereby resign my position with the Douglas County Sheriff's Office effective immediately," followed by Matthew's signature. Thereafter, Matthew secured several low-paying jobs, mainly in sales, which were unsuccessful. At the time of the modification *714 hearing on September 26, 2007, Matthew was selling health insurance strictly on a commission basis. Matthew agreed that his earning capacity in that position was $35,000 per year. The record establishes that as a result of no longer being a sheriff's deputy, Matthew lost the opportunity to do part-time security work, and that by June 2007, he was no longer a certified law enforcement officer.

DISTRICT COURT DECISION
After denying Christi's motion to reopen the record to introduce evidence concerning Matthew's allegedly untruthful testimony at the hearing denying that he had withdrawn approximately $33,000 from the Douglas County employees' retirement trust fund, the district court entered its decision on the request for modification on December 19, 2007. The court modified child support by reducing it to $800 per month for two children and $585 per month for one child. Such reduction was based on an annual income for Matthew of $35,000 and on a 40-hour workweek at minimum wage, $5.85 per hour, for Christi. That reduction was retroactive to February 1, 2007. Additionally, the trial court reduced Matthew's alimony obligation to the sum of $350 per month from February 1, 2007, through August 1, 2013.
With respect to the Citibank bill, the trial court ordered that the alimony obligation was subject to a credit in Matthew's favor in the amount of $4,300, to be repaid by Christi at the rate of $100 per month via a $100-per-month reduction in Matthew's alimony obligation for 43 months. In addition, the court made orders with respect to the parenting plan, but such are not pertinent to this appeal and therefore are not further detailed.

ASSIGNMENTS OF ERROR
Christi assigns to the district court seven errors, which we consolidate into the following four errors: (1) finding a sufficient change in Matthew's circumstances to modify his child support and alimony obligations; (2) finding that Matthew's termination from the Douglas County sheriff's office was at the instance of Christi; (3) finding that Christi was indebted to Matthew in the amount of $4,300 for his payment of the Citibank credit card debt, which would be paid by a credit of $100 per month for 43 months against Matthew's alimony obligation; and (4) denying Christi's motion to reopen the record to introduce evidence that Matthew lied under oath when he denied receiving approximately $33,000 from the Douglas County employees' retirement trust fund, which funds should have been considered as income for purposes of calculating child support.

STANDARD OF REVIEW
[1] An appellate court entrusts the modification of an alimony or child support award to the trial court's discretion and reviews such decision de novo on the record to determine whether the trial court has abused its discretion. See Crawford v. Crawford, 263 Neb. 37, 638 N.W.2d 505 (2002).

ANALYSIS

Matthew's Change in Job Status as Basis for Modification of Child Support and Alimony.
[2] In our transcript is a letter of the district judge setting forth his findings on the motion to modify and directing Matthew's counsel to prepare a decree "consistent" with these findings. This letter states in part: "The court specifically notes that at the instance of [Christi,] [Matthew] was terminated from his employment as a Deputy Sheriff of Douglas *715 County, Nebraska. [Christi] specifically pointed out to [Matthew's] employer his violation of rules which caused his ultimate dismissal." This reasoning does not find its way into the actual order entered on December 19, 2007, which is the operative final order under Wagner v. Wagner, 275 Neb. 693, 749 N.W.2d 137 (2008). The court's order simply modifies the alimony award without reasoning or rationale beyond a finding that there has been a material change in circumstances. But to the extent that the district court's rationale contained in its letter to counsel was the basis for the modification, we reject it because such rationale is not supported by the evidence, is against well-established precedent, and is untenable.
Although the record has testimony from Matthew that his internal affairs problems began with a telephone call and letter(s) from Christi, she says that it was her former counsel who did these things. But, Matthew did not produce such communications or establish, irrespective of who communicated with internal affairs, when the communications occurred, what was disclosed, and whether Matthew's employer was otherwise aware of the matters supposedly reported. Far more important, however, is the fact that at the time of the decree, Matthew was already on probationary status from the investigation, regardless of how and by whom the original internal affairs investigation was instigated. Matthew readily conceded his awareness that such status meant that further violations of policies and procedures could result in his termination. In short, at the time of the decree, Matthew was fully employed and earning $70,000 per year, but Matthew knew he was "skating on thin ice" with his employer. The evidence is undisputed that Matthew placed himself in a "resign or be fired" position by four different incidents, cited in the sheriff's disciplinary hearing notice, occurring after the divorce case was filed and while he was on probation, to wit: damaging a cruiser in June 2006, receiving two 3-day suspensions for failing to complete a report and failing to place property into evidence in July 2006, reporting to work late in November 2006, and failing to report to work at all on Christmas Eve 2006. In short, it was Matthew who fumbled his probationary status, not Christi. Therefore, as a factual matter, the district court is clearly wrong in concluding that Christi caused Matthew's loss of employment.
The evidence shows that Matthew's conduct while on probation caused Matthew to be in the position that his choice was to resign or be fired. Thus, from an analytical standpoint, we need not go back to how and why Matthew ended up on probationary status at the time of the divorce; the fact is that such was his status with his employer, he knew it, and all he needed to do for 12 months was to follow the sheriff's rules and procedureswhich he, and he alone, failed to do.
[3] We next look at the nature of the acts that caused Matthew's termination of employment. They may be summarized by stating that he could not live up to his employer's performance expectations and requirements, even though he knew his employment was somewhat tenuous because of his probationary status. In other words, Matthew was clearly involved in "employee misconduct," a subject upon which the Nebraska appellate courts have previously spoken when a change in employment status and earnings is alleged as justifying a downward adjustment in the obligor's child support or alimony obligation. In Pope v. Pope, 251 Neb. 773, 559 N.W.2d 192 (1997), the court extended the rule from Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985), to alimony reduction requests. In Ohler, the rule states that a *716 request to modify child support will be denied if the change in financial circumstances is due to fault or voluntary wastage or dissipation of one's talents and assets. In Pope, the court found that the husband's loss of employment because he was found asleep on the job was not grounds for reduction of his alimony obligation.
In Lambert v. Lambert, 9 Neb.App. 661, 617 N.W.2d 645 (2000), the husband was given the option to resign or be fired after failing a drug test, and as a result, he was earning approximately half of his previous salary in his new job. We found, relying on Pope, supra, although noting the conduct in Pope was of lesser gravity, that the trial court's reduction in the monthly alimony and child support payments was error. In Grahovac v. Grahovac, 12 Neb. App. 585, 680 N.W.2d 616 (2004), we found that an ex-husband's resignation or early retirement, which reduced his income, was due to his alcoholism and his refusal to secure effective treatment and that thus, the reduction in the ex-husband's income was not from good cause so as to entitle him to any reduction in his alimony obligation.
[4, 5] Although in a review de novo on the record we reappraise the evidence and reach our own independent conclusion, we also inquire into whether the trial court's decision was an abuse of discretion. See Pope, supra. A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. Id. The district court's decision granting modification in this case is an abuse of discretion, and in reaching our own conclusion on this record, we would deny Matthew's request for a downward modification because of his employment misconduct, which directly caused his earnings to be cut in half. The overwhelming weight of authority in cases of this nature goes against Matthew and does not support the trial court's decision. In the final analysis, placing the blame for Matthew's termination on Christi is factually incorrect and fails to acknowledge that Matthew caused his own termination as a deputy sheriff by his failures while on probationary status. We reverse and vacate the district court's downward modification of Matthew's child support and alimony obligation on the ground of Matthew's reduced earnings.

Effect of Bankruptcy Discharge of Debt Christi Was Ordered to Pay.
[6] In the original decree, Christi was ordered to pay a Citibank credit card debt in the approximate amount of $7,800, but after the divorce, she filed for bankruptcy and listed it as a debt to be discharged which it was. Citibank then pursued Matthew, and ultimately he negotiated a compromise settlement with Citibank to satisfy the debt for $4,300, which he paid. Therefore, part of the relief Matthew sought by motion was to have Christi reimburse him for that $4,300 by an offset against his child support obligation. The trial court granted Matthew such relief by reducing his alimony obligation to Christi by $100 per month for 43 months. We note that Matthew did not allege any material change in circumstances to justify modification of child support, nor did the trial court make a finding of a material change in circumstances so as to justify this modification of the alimony award. Christi argues that this reduction in her alimony was error because under the U.S. Bankruptcy Code, she is fully relieved of all dischargeable debts, and that such discharge is binding upon Matthew and the district court.
*717 [7] We note that the evidence shows that Matthew was named in Christi's bankruptcy filing as codebtor, yet there is no evidence that he filed an adversary proceeding to contest Christi's discharge from liability for the Citibank debt, which she listed among her unsecured creditors, with the description "Debtor to pay pursuant to Divorce Decree." An adversary proceeding is one where, in bankruptcy court, one party seeks affirmative relief from another. See Fed. R. Bankr.P. 7001. Adversary proceedings include actions to recover money or property, as well as actions objecting to discharge, among others. See id. Therefore, Matthew did not take advantage of the opportunity to contest Christi's discharge from the Citibank debt in her bankruptcy case. Neither party provided evidence of how Christi's discharge in bankruptcy affected him or her financially, other than Matthew's testimony that he had to borrow $4,300 from his father to pay the settlement he negotiated with Citibank.
With this background, we now turn to the decision that provides rather comprehensive guidance for us on this issue, Collett v. Collett, 270 Neb. 722, 707 N.W.2d 769 (2005). Shan Collett and Kimberly Collett were both veterinarians, and the husband, Shan, borrowed money from a bank to establish a veterinary clinic. The clinic was rather quickly unsuccessful. The wife, Kimberly, had guaranteed the loan. Shan filed a chapter 7 bankruptcy a month before their pending divorce went to trial. The evidence was that both parties expected that the collateral would cover the bank debtwhich expectation turned out to be incorrect. The trial court awarded Kimberly $1 a year in alimony in March 2002, but in November 2003, the bank obtained a deficiency judgment against Kimberly for nearly $69,000. That judgment caused Kimberly to seek a modification of her alimony award, alleging a change in circumstances. Kimberly introduced evidence showing that to pay the judgment, she would be required to pay $800 a month for 122 months, that an increase in alimony would increase her tax liability by $161.41 per month, and that her yearly income had decreased from $52,000 to $38,000 since the divorce, whereas Shan's monthly income had increased from $1,400 to $4,000 plus benefits. The district court modified the alimony award from $1 a year to $950 per month for 123 months, and Shan appealed. Shan's main attack on this decision was that it violated the U.S. Bankruptcy Code as well as the Supremacy Clause of the U.S. Constitution. The Nebraska Supreme Court affirmed the trial court's modification of the alimony award.
In Collett, as well as in the case before us, the factual pattern is a modification of an alimony obligation to account for a debt, which an obligated party was able to discharge in bankruptcy, with the other party being left with responsibility of the discharged debt. Christi's argument, similar to the husband's argument in Collett, is that her discharge prevents the reimposition of this debt on her, in effect, via a reduction in her monthly alimony payment.
[8-10] In our analysis of Christi's argument, we begin by looking at the nature of the obligation that was imposed on Christi via the decree's provision that she pay, and hold Matthew harmless on, the Citibank debt. The court in Collett, supra, held that generally, a bankruptcy discharge does not discharge the debtor from any debt for a domestic support obligation (but a credit card debt is obviously not a domestic support obligation), stating:
Generally, a bankruptcy discharge does not discharge the debtor from any debt for a domestic support obligation. At the time of Shan's discharge, 11 U.S.C. *718 § 523(a)(5) (2000) provided in relevant part that a discharge under that title did not discharge an individual debtor from any debt to a "former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree or other order" of a state court of record. Likewise, other types of debts incurred in the course of a marital dissolution proceeding were not dischargeable in bankruptcy unless: "(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ... or (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." 11 U.S.C. § 523(a)(15). We understand Shan to argue that because Kimberly did not file an adversary proceeding objecting to the dischargeability of Shan's indebtedness to the bank under § 523(a)(15), she cannot now seek a modification of alimony on the basis of the deficiency judgment which is related to the debt.
Collett v. Collett, 270 Neb. 722, 729, 707 N.W.2d 769, 775 (2005). As in Collett, Matthew did not contest the discharge of the Citibank debt in an adversary proceeding in Christi's bankruptcy. But, in Collett, such fact did not prevent Kimberly from getting the alimony award increased, because, as here, the original divorce decree awarded alimony and because the modification was sought on the basis of a change in circumstances. The court in Collett noted the facts that the decree originally included an award of alimony and that the modification was sought on the basis of a change in circumstances, and then said:
Other courts addressing this scenario have rejected arguments that modification of alimony is merely a "repackaging" of debts discharged in bankruptcy and thus prohibited by federal law, if the party seeking modification is able to demonstrate an actual change in financial circumstances subsequent to the dissolution and bankruptcy of the former spouse. See, In re Siragusa, 27 F.3d 406, 407 (9th Cir.1994); Smith v. Smith, 741 So.2d 420 (Ala.Civ.App.1999); In re Marriage of Trickey, 589 N.W.2d 753 (Iowa App.1998). The court in In re Marriage of Trickey articulated what we believe to be the correct analytical approach: "If the modification is essentially a reinstatement of the property settlement under the guise of alimony, the modification violates section 524 and is not permitted.... Mere attempts to `end run' around a bankruptcy discharge are not allowed.... However, if the alimony modification merely takes into account the fact that one spouse would no longer receive the property settlement payments upon which the original support award was premised and the discharge results in changed financial circumstances, then modification will not violate federal bankruptcy law."... 589 N.W.2d at 757.
Collett, 270 Neb. at 730-31, 707 N.W.2d at 775-76.
[11, 12] A postbankruptcy alimony modification violates the discharge injunction of the Bankruptcy Code when the spouse seeking modification of alimony is merely attempting to reinstate a discharged property settlement obligation, rather than seeking a modification based on changed circumstances. See In re Siragusa, 27 F.3d 406 (9th Cir.1994). Clearly, Collett involves uncontemplated and materially changed circumstances, because the parties both anticipated that the collateral *719 would cover the bank debt and that there would be no deficiency, when in fact, there was a substantial short-age after the bank disposed of the collateral. Accordingly, the modification did not violate the discharge injunction of the Bankruptcy Code. In the present case, Matthew did not plead a change of circumstances as the basis for his requested modification, nor did the trial court find such a change in ordering the reduction in alimony, but we need not decide whether such shortcomings are fatal to the attempted modification, because there was a lack of proof of changed circumstances. The only evidence that remotely resembles any change is that Matthew had to pay $4,300 to Citibank that he did not anticipate paying, but he introduced no evidence of how that impacted his overall financial situation, as was done in Collett. Therefore, because of the lack of a material change in circumstances, Matthew's motion concerning the Citibank account is simply an attempt to reinstate the discharged Citibank debt and he did not avail himself of an adversary proceeding, where he could have contested the discharge of this debt before the bankruptcy court entered its discharge. Nonspousal support obligations or debts incurred in the course of a marital dissolution proceeding are not dischargeable in bankruptcy unless "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." 11 U.S.C. § 523(a)(15)(B) (2000). This "defense" to discharge can be asserted by a codebtor such as Matthew in an adversary proceeding.
In conclusion, the district court erred in modifying Christi's alimony payments, because Matthew did not prove a material change of circumstances, Matthew did not challenge the discharge of the Citibank debt in an adversary proceeding, and the request for modification is merely an attempt to reinstate a discharged debt and, thus, is an "end run" around the bankruptcy discharge. For these reasons, we vacate the district court's modification of Christi's alimony award.

Reopening of Record.
Christi claims that the trial court should have allowed her to reopen the record so that she could establish that Matthew lied when he testified that he had not withdrawn approximately $33,000 from his Douglas County employees' retirement trust fund. Christi argues that adducing such evidence would have allowed the court to consider such sum as evidence of Matthew's earnings and as a basis for calculating child supportputting his income close to what he earned as a sheriff's deputy and thereby preventing the court from modifying his child support and alimony downward. However, our decision that the court erred in reducing Matthew's child support and alimony moots this argument. As a result, we need not discuss this assignment of error any further. See Kelly v. Kelly, 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court is not obligated to engage in analysis which is not necessary to adjudicate case and controversy before it).

CONCLUSION
Because Matthew's loss of the job upon which his child support was calculated, and his alimony was predicated, was directly caused by his failure to conform to his employer's policies and expectations at a time when he was on probationary status, the blame for the loss of his job cannot be laid at Christi's doorstep. The loss of the job was due to Matthew's employment misconduct, and as a result, he is not *720 entitled to a reduction in his child support or alimony obligations. Thus, we reverse and vacate the trial court's decision granting such modification. Because Matthew failed to overcome the effect of the discharge of the Citibank debt by the U.S. Bankruptcy Court, he was not entitled to a credit of $4,300 by way of a $100 per month reduction in his alimony obligation, and we reverse and vacate the trial court's order extending such credit to him.
REVERSED AND VACATED.
SIEVERS, Judge, participating on briefs.