Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/18/2022 09:06 AM CST

Lisa A. Hodgen, appellant, v.
Mark S. Hodgen, appellee.
___ N.W.2d ___

Filed January 11, 2022.    No. A-20-927.

1. **Modification of Decree: Appeal and Error.** Modification of a dis-
solution decree is a matter entrusted to the discretion of the trial court,
whose order is reviewed de novo on the record, and will be affirmed
absent an abuse of discretion by the trial court.

2. **Modification of Decree: Child Support: Proof.** A party seeking to
modify a child support order must show a material change in circum-
stances which (1) occurred subsequent to the entry of the original decree
or previous modification and (2) was not contemplated when the decree
was entered.

3. **____: ____: ____.** The party seeking the modification has the burden
to produce sufficient proof that a material change of circumstances has
occurred that warrants a modification and that the best interests of the
child are served thereby.

4. **Modification of Decree: Child Support.** Among the factors to be con-
sidered in determining whether a material change of circumstances has
occurred are changes in the financial position of the parent obligated to
pay support, the needs of the children for whom support is paid, good
or bad faith motive of the obligated parent in sustaining a reduction in
income, and whether the change is temporary or permanent.

5. **Modification of Decree: Alimony: Good Cause.** An award of alimony
may be modified or revoked if the moving party can show good cause.

6. **Modification of Decree: Child Support: Alimony: Good Cause.** A
material change in circumstances in modification of child support cases
is analogous to the good cause standard articulated for modification of
alimony.

7. **Modification of Decree: Child Support: Alimony.** In the context of
child support and alimony modification, a complaint for modification
will be denied if the change in financial condition is due to fault or vol-
untary wastage or dissipation of one's talents and assets.

8 **Judgments: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.

9. **Modification of Decree: Child Support: Alimony.** Where a party owes past due alimony or child support, the failure to pay must be found to be a willful failure in spite of an ability to pay before a request for modification of a decree may be dismissed on the basis of unclean hands.

10. **Equity.** Equity is not a rigid concept, and its principles are not applied in a vacuum, but instead, equity is determined on a case-by-case basis when justice and fairness so require.

Appeal from the District Court for Lincoln County: Richard A. Birch, Judge. Affirmed.

James C. Bocott, of Law Office of James C. Bocott, P.C., L.L.O., for appellant.

Lindsay E. Pedersen, Attorney at Law, P.C., L.L.O., for appellee.

Riedmann, Bishop, and Arterburn, Judges.

Bishop, Judge.

## INTRODUCTION

Lisa A. Hodgen, now known as Lisa A. Pickett, appeals from the order of the Lincoln County District Court modifying a decree which dissolved her marriage to Mark S. Hodgen. Lisa claims the district court abused its discretion in finding that a material change in circumstances had occurred justifying the reduction of Mark's child support and alimony obligations. She also argues the district court abused its discretion in reducing Mark's support obligations over her claim of unclean hands. We affirm.

## BACKGROUND

### February 2018 Decree of Dissolution

The parties' marriage was dissolved by decree on February 27, 2018. The decree reflects that the parties were married in 1977, and at the time of divorce, Lisa was 57 years old and

Mark was 58 years old. Mark was ordered to pay $1,000 per month as alimony to Lisa for a period of 180 months. Only two of the parties' children were affected by the decree; the parties were awarded joint legal custody, and Lisa was awarded physical custody. Mark was ordered to pay $1,405 per month in child support to Lisa, which could be abated by 50 percent in June, July, and August of each calendar year "so long as [Mark] has the minor children for visitation for 28 days or more during the summer." Lisa appealed the decree, but in case No. A-18-424, this court dismissed her appeal on July 12, 2018, for failure to file a brief.

## Post-decree Proceedings

On October 1, 2018, Mark filed an "Application and Affidavit to Obtain Abatement of Child Support for Summer Visitation" in the district court, alleging that he had exercised 33 days of parenting time in the summer of 2018 and seeking a 50-percent abatement of his child support obligation for the months of June, July, and August in accordance with the February 2018 decree. Lisa objected to Mark's requested abatement, claiming that her living situation with the children could not afford having Mark's child support payments be halved. In an order entered on December 20, the district court granted Mark a 50-percent abatement in his child support obligation for the month of July, but the court denied his requests for abatement for June and August. Mark appealed the December 20 order, claiming the court erred in denying his request for abatement for June and August. In *Hodgen v. Hodgen*, No. A-19-285, 2019 WL 6130934 (Neb. App. Nov. 19, 2019) (selected for posting to court website), this court reversed the district court's order and remanded the matter with directions to grant Mark the requested 50-percent abatement for the months of June, July, and August 2018 in accordance with the terms of the parties' decree.

## January 2020 Complaint to Modify Decree

On January 30, 2020, Mark filed a "Complaint to Modify Decree" in the district court, alleging that the loss of his

employment and the corresponding decrease in his income constituted a material change in circumstances justifying modification of his child support and alimony obligations. Trial took place on September 10. Mark appeared with his attorney; Lisa did not appear, but she was represented by her attorney.

The evidence adduced at trial demonstrated that Mark had been employed by Union Pacific for 18 years and that he made approximately $95,000 in annual income. In September 2019, Mark was dismissed from his employment after an internal investigation and hearing; this dismissal stemmed from Mark's failure to properly complete employee risk assessments despite his belief that he was properly completing them. Mark appealed his dismissal through Union Pacific's internal review process, and his dismissal was upheld. Following the termination of his employment, Mark began looking elsewhere for a job. He applied for several positions and found no success until April 2020. Mark testified that he relied on his savings to take care of his living expenses and that he had also cashed out his life insurance policy and a "CD" purchased after the parties' divorce to help cover his expenses. Beginning in October 2019, Mark began to receive "a little over $1,400 a month" in unemployment. This period of unemployment lasted until Mark found employment in April 2020. Mark subsequently left this job and began new employment in June. His annual salary was approximately $57,000 at the time of trial in September.

While he was unemployed, Mark began missing payments on his support obligations, and he continued to miss further payments after he became employed in April 2020. The payment history reports for Mark's alimony and child support show that under the terms of the parties' decree, Mark owed $8,791.84 in unpaid child support and $12,190.06 in unpaid alimony as of September 8, 2020. Mark did not dispute these amounts at trial, and he testified that it would have been "[i]mpossible" for him to pay his support obligations while he was unemployed. He also expressed his belief that he could not afford to pay much toward his support obligations

even after finding employment due to uncertainties in his living situation.

### Order of Modification, October 2020 Motions, and Appeal

On September 24, 2020, the district court entered an order modifying Mark's support obligations. At the time of the order, one of the two children affected by the February 2018 decree had attained the age of majority, and the court determined that there had "been no change in the earning capacity of [Lisa] since the decree was entered." With respect to Mark's loss of employment and reduced income, the court found:

> It is undisputed that [Mark] was fired from his job with the Union Pacific Railroad for not properly preparing the required monthly risk assessments. However, it is equally clear that [he] did not voluntarily leave his job or reduce his earning capacity. The evidence is undisputed that he believed he was properly completing the risk assessments, and performing his job in the required manner. [Mark] did not want to leave his 28 [sic] year employment with the railroad, and took every step he could to retain that employment. Obviously, . . . Union Pacific disagreed with his opinion regarding the manner in which he was completing the risk assessments, and was correct in its conclusion. However, that result is not dispositive of [Mark's] complaint.
>
> Even though it was [Mark's] actions that caused him to lose his job, he believed he was performing his job properly and he had no intention of violating his rules of employment, reducing his income, or dissipating his earning capacity. Additionally, after being fired he undertook a serious and consistent effort to regain his job with the railroad and when that failed to find alternate employment.

Based on Mark's change of employment and loss of income, the court found that modification of Mark's child support obligation was warranted because there was a material change

in circumstances occurring after the February 2018 decree not contemplated when the decree was entered. This material change in circumstances was also deemed to be good cause to modify Mark's alimony obligation. The court concluded that "there was no bad faith motive" in Mark's reduced level of income, that the reduction did not result from "the mere passage of time" or Mark's "wrongdoing or voluntary dissipation," and that the change was permanent. Based on these findings, the court ordered Mark to pay $750 per month in alimony to Lisa and $797 per month in child support, with a 50-percent abatement of child support in August if Mark exercised 28 consecutive days of his summer parenting time. The order set March 31, 2020, as the effective date of modification and also required Mark to maintain health insurance for the minor child.

Following the entry of the district court's order, Mark filed a "Motion to Reconsider, Alter or Amend Order" that requested the court to set the date of modification back to January 1, 2020, and to further reduce his alimony obligation to $600 per month. Lisa also filed a "Motion for New Trial" alleging that the September 2020 order modifying Mark's support obligation was "not sustained by sufficient evidence" and was "contrary to law." Lisa also claimed that the district court's order of modification "did not address or make findings of fact concerning [her] allegation of 'unclean hands' when the evidence was undisputed that [Mark] had the ability to pay child support and spousal support, yet intentionally elected not to pay support due." Following a hearing held on October 19, the court denied the parties' respective motions in a journal entry entered on December 7.

Lisa appeals.

## ASSIGNMENTS OF ERROR

Lisa claims the district court abused its discretion in modifying Mark's child support and alimony, because Mark's reduced income was his own fault and thus could not be either a material change in circumstances or good cause justifying

modification. She also claims the court abused its discretion in modifying Mark's support obligations over her claim of unclean hands based on Mark's failure to pay child support and alimony.

## STANDARD OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020).

## ANALYSIS

### Modification of Child Support and Alimony

Lisa claims the district court abused its discretion in reducing Mark's child support to $797 per month and alimony to $750 per month. She claims that "[i]t is undisputed that [Mark] was fired for wrongdoing" in that his dismissal was based upon his failure to properly complete employee risk assessments. Brief for appellant at 12. She argues that under Nebraska law, Mark's termination from his employment with Union Pacific and his corresponding decreased income could not be a material change in circumstances or good cause to warrant the modification of his child support or alimony because Mark was at fault for the loss of his employment.

[2-6] A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby. *Id.* Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the

financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Id.* Under Neb. Rev. Stat. § 42-365 (Reissue 2016), an award of alimony may be modified or revoked if the moving party can show good cause. It is well established that a "material change in circumstances" in modification of child support cases is analogous to the "good cause" standard articulated for modification of alimony. *Grahovac v. Grahovac*, 12 Neb. App. 585, 680 N.W.2d 616 (2004).

As the district court observed in its order, Mark's termination from his position with Union Pacific was based upon his employer's conclusion that he was improperly completing employee risk assessments as required by his position. The court found that Union Pacific "was correct in its conclusion" regarding Mark's failure to properly complete these risk assessments. Neither party disputes the court's findings on the facts of Mark's termination from employment. Rather, the dispute centers on the underlying nature of the actions that caused Mark's dismissal.

[7] In the context of child support and alimony modification, a complaint for modification will be denied if the change in the movant's financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. See *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997). Nebraska appellate courts have addressed the issue of whether allegations of changed employment status and reduced income that stem from employment misconduct may serve as grounds for modification of child support and alimony obligations. In *Pope v. Pope*, 251 Neb. at 778, 559 N.W.2d at 196, the Nebraska Supreme Court found that the ex-husband's loss of employment and reduction in income was the result of his "own bad act" of "fail[ing] to stay awake on the job." The court reasoned that in the absence "of some justifiable reason" for his falling asleep at work, his loss of employment and reduced income

did not constitute good cause to justify the termination of his alimony obligation. *Id.*

Following *Pope v. Pope, supra*, this court has applied these principles in several circumstances. In *Lambert v. Lambert*, 9 Neb. App. 661, 617 N.W.2d 645 (2000), the former husband failed multiple drug tests required by his employer and was thereafter terminated from his employment. He sought modification of his child support and alimony, and the trial court granted his motion and reduced his child support and alimony obligations. This court, relying on *Pope v. Pope, supra*, concluded that the district court abused its discretion in modifying the former husband's support obligations because he "was essentially fired because he chose to use marijuana" and "did this knowing that it would put his livelihood in jeopardy and . . . affect his ability to meet his court-ordered financial obligations." *Lambert v. Lambert*, 9 Neb. App. at 668, 617 N.W.2d at 650. Due to this fault, we found that his change in employment status and income could not be a material change in circumstances or good cause, and we reversed the decision of the district court.

Similarly, in *Grahovac v. Grahovac, supra*, the former husband resigned from his employment and incurred a reduction to his income as a result. He subsequently motioned the trial court to reduce his child support and alimony obligations based upon that reduction in his income, and the district court granted a reduction to both obligations. On appeal, this court found the circumstances to be similar to those in *Lambert v. Lambert, supra*, and determined that the record demonstrated his "resignation or 'early retirement,' which reduced his income, was due to . . . his alcoholism and his refusal to secure effective treatment." *Grahovac v. Grahovac*, 12 Neb. App. 585, 590, 680 N.W.2d 616, 622 (2004). This court concluded that because the ex-husband's employment "ended because of his continued drinking" and "not from good cause," he was not entitled to reductions of his support obligations on that basis. *Id.* at 591, 680 N.W.2d at 622.

In *Murphy v. Murphy*, 17 Neb. App. 279, 759 N.W.2d 710 (2008), the former husband resigned from his employment as a deputy sheriff and subsequently requested modification of his child support and alimony obligations. The district court granted reductions to both support obligations based upon his reduced level of income. On appeal, this court found that the former husband's resignation was due to several instances of misconduct that included, among other violations, coming to work late, not coming to work at all, damaging a cruiser, failing to report an accidental firearm discharge, and possessing canine training narcotics in his home. Based on this history of misconduct and the evidence that the former husband was given a choice to resign or be fired, we concluded that the district court abused its discretion in reducing the former husband's support obligations because his resignation and reduced income were the direct results of his pattern of employment misconduct.

[8] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018).

While we are mindful of the precedent that guides our review, we find the present case distinguishable from those we have previously described. The misconduct described in the prior cases entailed actions that were patent and obvious violations, often willfully engaged in, of each former husband's respective rules of employment such that the former husbands understood these actions were employment violations that would result in discipline up to and including dismissal. As the district court also noted, this was not true in Mark's case. Mark testified regarding his belief that he was completing the risk assessments correctly in accordance with

the requirements of his employment, and the record neither contradicts that belief nor indicates that Mark willfully caused his loss of employment with Union Pacific. Two Union Pacific employees who both had Mark as their foreman for approximately 10 years also testified favorably on Mark's behalf, noting that Mark took the risk assessments seriously and also noting that Union Pacific no longer had the foreman position which Mark had previously held. Based on the record, we find Mark's conduct distinguishable from that which the Nebraska Supreme Court and this court have previously held to preclude modification. Accordingly, we find that the district court did not abuse its discretion in concluding that Mark's lost employment and reduced income demonstrated a material change in circumstances and good cause justifying the modification of his child support and alimony.

### UNCLEAN HANDS

Lisa also claims that the district court abused its discretion in failing to deny Mark's complaint for modification on the basis of his unclean hands. She argues that Mark "willfully and intentionally refused to pay child and spousal support, despite his clear ability to do so." Brief for appellant at 14.

[9] As applicable to complaints for the modification of child support and alimony obligations, the Nebraska Supreme Court has stated that in cases in which a party owes past due alimony or child support, "the courts have generally held that the failure to pay must be found to be a willful failure in spite of an ability to pay before a request for modification of a decree may be dismissed on the basis of 'unclean hands.'" *Voichoskie v. Voichoskie*, 215 Neb. 775, 777, 340 N.W.2d 442, 444 (1983) (*Voichoskie I*). See, also, *Marr v. Marr*, 245 Neb. 655, 515 N.W.2d 118 (1994); *Voichoskie v. Voichoskie*, 219 Neb. 670, 365 N.W.2d 467 (1985) (*Voichoskie II*); *Richardson v. Anderson*, 8 Neb. App. 923, 604 N.W.2d 427 (2000).

In its order modifying the decree, the district court did not make an express finding as to whether the doctrine of unclean hands barred any modification of Mark's support obligations.

However, in its journal entry dated December 7, 2020, the court denied Lisa's "Motion for New Trial" in which she claimed that the court failed to make a finding regarding her "allegation of 'unclean hands' when the evidence was undisputed that [Mark] had the ability to pay child support and spousal support, yet [he] intentionally elected not to pay support due." Based on this journal entry, it is evident the district court concluded the doctrine of unclean hands did not bar the requested modification of Mark's support obligations. In our de novo review, we cannot say the court abused its discretion in reaching that conclusion.

The payment history reports for Mark's child support and alimony obligations indicate that prior to the termination of his employment with Union Pacific, Mark was generally consistent in paying both child support and alimony. While Mark occasionally fell behind on these obligations, the accumulated arrears during this period were generally not substantial. However, the payment history report for Mark's alimony obligation indicates that after a payment of $931.41 on September 15, 2019, Mark paid only $0.94 in alimony to Lisa through September 8, 2020. At that date, Mark's alimony arrearage under the parties' decree of dissolution totaled $12,190.06.

As for child support, Mark's payments were sporadic after his termination of employment in September 2019. The record indicates that in the last third of 2019, Mark's child support payments included $73.58 in September, $1,202.50 in November, and $500 in December. In 2020, he paid $942.55 in May, $1,405 in June, and $565.38 in August. By September 8, 2020, Mark's child support arrearage under the parties' decree of dissolution totaled $8,791.84.

Lisa directs our attention to the Nebraska Supreme Court decisions in *Voichoskie II, supra*, and *Marr v. Marr, supra*, as analogous to the facts in the present case. In *Voichoskie II*, the Nebraska Supreme Court noted that the former husband, in addition to his poor history of child support payments which had frequently "been forcibly extracted from him by

withholding or garnishment proceedings," had "often been content to live on unemployment and [had] not made a substantial effort to obtain employment at a salary equal to the one he received at the time of the divorce." 219 Neb. at 672, 365 N.W.2d at 469. In *Marr v. Marr*, the Supreme Court observed that the former husband had, from the beginning of 1989 until June 1991, made one child support payment of $200 in 1989 "when his income was almost $20,000," two payments totaling $315 in 1990 "when his income was $9,549," and one payment of $175 "in the first 6 months of 1991 . . . when his salary was over $1,000 net per month." 245 Neb. at 659-60, 515 N.W.2d at 121.

There is no dispute that Mark has not paid any meaningful amount toward his alimony obligation and made only sporadic payments of child support since September 2019. However, prior to his dismissal, Mark was consistently paying both of his support obligations, and we note that Mark made some payments of child support even when he had not yet found reemployment. Some of these payments were also close to the full amount of child support required by the parties' decree. The record shows that Mark made consistent efforts to find employment after his dismissal from Union Pacific in September 2019, and it was not until April 2020 that he found success in his job search, albeit at a lesser income. Mark's bank account records demonstrate that, from September 2019 until September 2020, his end of month balance was at least $2,000 and trended upward to over $3,000 after Mark found reemployment, and his expenditures routinely included several nonessential items such as liquor and dining out. Mark also testified as to the uncertainty of his living situation despite his employment status, stating that he believed he could possibly need to move back in with his mother to make ends meet.

[10] In addition to the foregoing evidence in the record, we further observe that the Nebraska Supreme Court has stated that "[i]f the evidence shows that the petitioner is able to pay

the arrearage or is unable to pay through some intentional conduct on his part, the doctrine of [un]clean hands *may* be invoked to bar his claim for relief." *Voichoskie I*, 215 Neb. at 779, 340 N.W.2d at 445 (emphasis supplied). Equity is not a rigid concept, and its principles are not applied in a vacuum, but instead, equity is determined on a case-by-case basis when justice and fairness so require. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004). While we do not ignore the fact that Mark's substantial arrearages accumulated due to his choice not to pay child support and alimony, we likewise cannot ignore the uncertain nature of his circumstances caused by his reduced level of income and his attempts to pay child support despite this uncertainty. In considering the record and the balance of equities in this case, we cannot say the district court abused its discretion in not barring Mark's complaint for modification under the doctrine of unclean hands.

## CONCLUSION

For the reasons set forth above, we affirm the district court's modification of Mark's child support and alimony.

AFFIRMED.