MARK A. LAMBERT, APPELLEE, V.
AMY JO LAMBERT, APPELLANT.
617 N.W.2d 645

Filed October 3, 2000.     No. A-99-685.

Richard K. Watts and Stephanie A. Payne, of Watts Law Office, P.C., for appellant.

Robert I. Blevens, of Blevens & Damman, for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Amy Jo Lambert appeals from the district court's order modifying a decree which dissolved her marriage to Mark A. Lambert. On appeal, Amy challenges the court's reduction of child support and alimony due from Mark. Because we conclude that the court abused its discretion in finding material changes in circumstances justifying the reductions, we reverse, and remand with directions to the trial court to enter an order denying the relief requested.

## II. BACKGROUND

The marriage of Amy and Mark was dissolved by order of the district court for York County on January 15, 1997. The court awarded Amy custody of the couple's two children subject to Mark's visitation. The court ordered Mark to pay $884 per month in child support for the two children, to be reduced to $616 when only one minor child remains in Amy's custody. Mark was also ordered to pay $250 per month in alimony for 60 months.

At the time of the dissolution, Mark worked for Nebraska Public Power District (NPPD) as a line technician earning about $24 per hour. This work normally required Mark to be away from home during the week. He resigned from this position in September 1998 after about 18 years with the company. His resignation was precipitated by a failed random drug test.

Random drug tests were required for Mark's position with NPPD. In February 1997, Mark tested positive for marijuana. The positive test resulted in a demotion and a reduction in salary. His employment would have been terminated had he not agreed to treatment through NPPD's Employee Assistance Program.

In August 1998, Mark again tested positive for marijuana. Mark was notified of the results by telephone while he was working out of town. He testified that he verbally resigned that same evening. However, on September 4, he requested that the sample be retested.

NPPD notified Mark of the results of the original test by letter dated September 9, 1998. The notice stated that while it would not guarantee continued employment, Mark could again enroll in the Employee Assistance Program. He had 7 days to enroll or his employment would be terminated. Mark testified that he did not have the option to enter the program and that he had already been forced to resign before the September letter.

On September 10, 1998, Mark appealed the drug test results, claiming that the "Advil and Motrin" he had taken could have shown up as marijuana on the drug test. He also had concerns about the collection procedures used by the hospital. After investigating Mark's assertions, and after the retest came back positive for marijuana, the NPPD Fitness for Duty Appeal Board determined that the test was valid and that the results would stand.

On September 17, 1998, after Mark failed to enroll in the Employee Assistance Program, NPPD issued Mark a notice of termination that would be effective September 28, 1998. NPPD gave Mark the opportunity to resign instead, and he did so by letter on September 17, 1998. Mark testified that he resigned because he feared layoffs due to deregulation, because he no longer wanted to be on the road, and because he wanted to spend more time with his children.

Claiming a substantial and material change in circumstances, on November 6, 1998, Mark filed a petition to modify the divorce decree. At about the same time he filed his application to reduce his child support and alimony, Mark also quit a second job that he had held for over 6 years. He testified that he left this job due to a mutual disagreement with his employer. At the time of the hearing, Mark was working for A&L Sales and Service as foreman of grain bin and metal building construction for $11.55 per hour.

On June 1, 1999, the district court issued an order reducing Mark's child support obligation to $588 per month effective November 30, 1998. His alimony obligation was reduced to $125 per month, but the number of months he was to pay was extended so that the total alimony would equal the amount in the original decree. The effective date of the change in alimony was also November 30, 1998. Amy filed this timely appeal.

## III. ASSIGNMENTS OF ERROR

On appeal, Amy first asserts that the trial court erred in finding that Mark showed a material and substantial change in circumstances which warranted a reduction in child support. Second, she asserts that the trial court erred in finding that Mark demonstrated good cause to warrant a reduction in alimony payments.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

■ Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Mace v. Mace*, 9 Neb. App. 270, 610 N.W.2d 436 (2000).

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Dormann v. Dormann*, 8 Neb. App. 1049, 606 N.W.2d 837 (2000).

■ In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts over another. *Mace, supra.*

## 2. ALIMONY

■ We begin with Amy's second assignment of error, that the trial court erred in finding that Mark demonstrated good cause to warrant a reduction in alimony payments. An award of alimony may be modified or revoked only for good cause shown. Neb. Rev. Stat. § 42-365 (Reissue 1998). Good cause means a material and substantial change of circumstances and depends upon the facts of each case. *Portland v. Portland,* 5 Neb. App. 364, 558 N.W.2d 605 (1997). Any change in circumstances within the contemplation of the parties at the time of the decree does not justify a change or modification of the original order. *Id.*

Our decision in this case is governed by *Pope v. Pope,* 251 Neb. 773, 559 N.W.2d 192 (1997). In that case, the Supreme Court determined that the alimony obligor's employment termination due to his falling asleep on the job did not constitute good cause justifying termination or modification of alimony. *Id.* In making that determination, the court looked to the child support case of *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615 (1985), for guidance.

■ In *Ohler,* the father's criminal activity resulting in incarceration did not constitute a material change in circumstances justifying a reduction in or termination of his child support obligations. Quoting the New Hampshire Supreme Court with approval, the court in *Ohler* stated that " 'a petition for modification will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. . . .' " 220 Neb. at 275, 369 N.W.2d at 617. The *Pope* court extended this rule to cases involving the modification or termination of alimony.

It is undisputed that there has been a change in Mark's financial condition. He is now earning approximately half as much as

he earned at NPPD. However, the issue is whether the change was due to Mark's fault or his voluntary wastage or dissipation of his talents and assets.

Mark attempts to distinguish this case from *Pope* by stating that he voluntarily terminated his employment and that he made a career change for justifiable reasons. Contrary to the first assertion, a reasonable examination of the record reveals that, in substance, Mark's employment was terminated by NPPD for Mark's failing the drug test. His own testimony indicates as much.

> Q. [Amy's attorney] Just so we're straight and the court understands, Mr. Lambert, as a result of this second dirty urinalysis you knew at the time that that happened that if you didn't enter the Employee Assistance Program your employment would be terminated; isn't that right?
>
> A. I wasn't given that option.
>
> Q. Well, you quit before you were given the option; is that what you're saying?
>
> A. My supervisor told me I either quit or I would be terminated the day I turned in my resignation.
>
> Q. Okay. So, in other words, you were fired because you tested positive for marijuana?
>
> A. Correct.

After being sent a notice of termination, Mark was given the option to resign or to have his employment terminated. Mark accepted the option of resigning because he did not want to jeopardize his employment record with an involuntary termination. Even if Mark was given the option to save his job by getting treatment from the Employee Assistance Program, it does not change the analysis. Mark's refusal to enter the program to try to save his job is an even stronger indicator of fault or voluntary wastage of Mark's talents.

Mark's second attempt to distinguish his case from *Pope*, that he made a career change for justifiable reasons, also lacks support from the record. Mark's first reason was that he resigned because he feared that he could be laid off in the future. His attempt to explain this illogical excuse was that if he waited, he could be part of a large group of people laid off at the same time and forced to enter the job market simultaneously. This might be

reasonable if he had legitimate prospects for other employment, but he did not. In addition, this excuse is undermined by the fact that he appealed the drug test results because he still wanted to work for NPPD.

Q. So you quit the same day you found out about the results of the test?

A. Yes, I did.

Q. When was it you requested the retest?

A. Two or three days after that.

Q. After you quit? Why would you do that?

A. For if I felt that I could — if there was another job open through NPPD that I felt I was qualified for and that urinalysis come back negative that I would have a good chance of getting that job again. Or a different job.

Mark's second excuse for leaving employment at NPPD was that he no longer wanted to be on the road. The desire to spend more time at home is understandable, but the desire cannot override responsibility. Further, Mark testified that although he has not applied for any line technician jobs, he has made verbal contacts with other companies.

Mark's final reason for resigning was that he wanted to spend more time with his children. While this may be true, the fact remains that Amy has custody of the children. Mark was granted visitation every other weekend, and his job with NPPD did not interfere with that schedule. There is nothing in the record to indicate that he discussed with Amy spending more time with the children or that he petitioned the court for more visitation. It is true that his schedule did not allow him to go to his children's school events scheduled on a weekday. However, even if we accept that this was a reason for resigning, leaving a job in the face of court-ordered obligations is not the answer to this problem. This analysis indicates that these reasons are actually afterthoughts and not the reasons Mark left his job.

The rule announced in *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997), is that a petition for the modification or termination of alimony will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. While some could argue that *Pope* was a harsh result, see *id.* (Connolly, J., dissenting), this case is

much more clear cut. Mark was essentially fired because he chose to use marijuana. He did this knowing that it would put his livelihood in jeopardy and knowing that losing his job would affect his ability to meet his court-ordered financial obligations. Mark's behavior is much more blameworthy than falling asleep at one's desk as was the situation in *Pope*. As such, the trial court abused its discretion in finding that Mark demonstrated good cause to warrant a reduction in alimony payments.

### 3. CHILD SUPPORT

Amy's remaining assignment of error is that the trial court erred in finding that Mark showed a material and substantial change in circumstances which warranted a reduction in child support. A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. *Mace v. Mace*, 9 Neb. App. 270, 610 N.W.2d 436 (2000). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Becker v. Becker*, 6 Neb. App. 277, 573 N.W.2d 485 (1997).

" ' "[M]aterial change in circumstances" ' " in reference to modification of child support is analogous to modification of alimony for ' "good cause." ' " *Lodden v. Lodden*, 243 Neb. 14, 17, 497 N.W.2d 59, 61 (1993) (quoting *Morisch v. Morisch*, 218 Neb. 412, 355 N.W.2d 784 (1984)). See, also, *Pope, supra.*

Mark's financial position has changed for the worse. However, under the facts of this case, a reduction in his child support obligation is not warranted. The previous alimony analysis applies with equal force in determining whether Mark's child support obligation should be reduced. A petition for the modification of child support will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. Mark lost his job with

NPPD due to his own wrongdoing. We are not saying that Mark left his job for the purpose of evading his responsibility to his children. However, his actions do demonstrate bad faith in that he continued to use marijuana knowing that it put his job in jeopardy and knowing that he had a financial obligation to his children. In addition, by refusing to accept treatment from the Employee Assistance Program, he guaranteed the termination of his employment with NPPD. Under Nebraska law, a reduction in income caused by this type of behavior does not constitute a material change that would justify a reduction in child support.

## V. CONCLUSION

We conclude that the district court abused its discretion regarding both alimony and child support. We therefore reverse, and remand with directions to the trial court to enter an order denying the relief requested in the petition to modify.

REVERSED AND REMANDED WITH DIRECTIONS.