IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

OSWALD V. OSWALD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOHN H. OSWALD, APPELLANT,

V.

TAMMY L. OSWALD, APPELLEE.

Filed May 28, 2019.    No. A-18-573.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Benjamin E. Maxell, of Govier, Katskee, Suing & Maxell, P.C., L.L.O., for appellant.

Donald A. Roberts and Justin A. Roberts, of Lustgarten & Roberts, P.C., L.L.O., for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

John H. Oswald appeals from an order of the district court for Douglas County which denied his complaint to modify his child support and alimony obligations. Based on the reasons that follow, we affirm.

BACKGROUND

A decree of dissolution was entered on April 20, 2015, dissolving the marriage between John and Tammy L. Oswald. The provisions in the decree were based on a "collaborative divorce process" which ultimately resulted in a settlement agreement with respect to all issues that was entered into by the parties and was approved by the court. The parties were awarded joint legal and physical custody of their two minor children. John agreed to pay child support in the amount of $1,000 per month until both of the children reached the age of majority. This amount was a

- 1 -

deviation from the Nebraska Child Support Guidelines, such that John should have been paying more than $1,000 per month as long as both of the children remained minors, and should have been paying less than $1,000 when only one of his children remained a minor. The deviation was agreed to by the parties, in part, because "they [agreed] to share [equally] other expenses not contemplated within the guidelines," including, tuition for private schools, school uniforms, school supplies, the children's automobile expenses, and each child's cellular telephone bill. Additionally, John agreed to be solely responsible for "all expenses related to the sporting activities of the minor children including, but not limited to, registration fees, equipment, travel expenses, etc." John also agreed to pay Tammy alimony in the amount of $1,500 per month for 132 months.

On June 8, 2017, John filed a complaint to modify the decree of dissolution. In his complaint, he alleged that there had been a substantial and material change in his financial circumstances because he had "involuntarily lost [the] employment position [he held at the time the decree was entered]." He requested that as a result of his change in financial circumstances, that his monthly child support and alimony obligations be reduced or eliminated entirely. He also requested that the decree be further modified such that he be required to pay only one-half of the expenses related to the minor children's athletic activities. We note that by the time John filed his complaint to modify, only one of the parties' children remained a minor.

A trial was held on John's complaint to modify child support and alimony. The focus of the evidence presented at trial was John's employment and financial circumstances, both at the time the decree was entered and at the time of the modification proceedings. In addition, both parties focused their presentation of evidence on why John's previous employment had ended.

The evidence revealed that at the time the April 2015 decree of dissolution was entered, John had been employed as a sales representative for a sporting goods company for the past 17 years. In April 2015, John was considered the company's "No. 1" salesperson, which meant he was also the highest paid sales representative. In 2015, his annual gross income totaled $140,000. Of that $140,000, his base salary was $38,000 and the remaining $102,000 constituted earned commissions. While John admitted that commissions were not a guarantee, he also explained that in the 5 years prior to the divorce, his average annual gross income was $150,000. As such, when he entered into the settlement agreement with Tammy, John believed that he would continue to earn at least $140,000 per year going forward.

In September 2015, approximately 5 months after the decree of dissolution was entered, John's employer made some significant changes. Many employees were "downsized" and those who remained working at the company were informed that the company's compensation plan would be different. John testified that he was informed that he would be earning a more "structured salary," such that his annual base salary would be approximately $90,000, but his ability to earn commissions would be limited. A letter sent to John by his employer detailed the new compensation plan. John's "Target Compensation Level" totaled $107,000 annually. His annual base salary would be $90,950 and he could earn up to $16,050 annually in commissions. John testified that he was informed that he would have to agree to the new compensation plan or be terminated. John indicated that he was not happy with the terms of the new plan and that he engaged in a "back and forth" with his employers over the next few weeks. John testified that, ultimately, he decided to agree to the terms of the new compensation plan and sign a new contract

with the company. However, before he could sign the contract, he was notified that his employment had been terminated.

Contrary to John's testimony that his employer terminated his employment, other evidence in the record indicated that John voluntarily resigned from his job because he did not agree with the new compensation plan. Such evidence includes a copy of a "Separation Agreement" entered into by John and his employer. That agreement provided: "As has been discussed, your employment with [the company] terminated on December 26, 2015 . . . as a result of your voluntary resignation from the company." The agreement also provided John with "Severance Benefits" in exchange for John agreeing to a general release of all claims against the company and to a non-disclosure clause. John signed the separation agreement on January 25, 2016. However, at trial, John disputed that the language of the separation agreement indicated that he had voluntarily resigned from the company. He testified that the company had never before offered a severance package to any employee who had voluntarily resigned. John asserted that he was provided a severance package only because the company had terminated his employment.

Other evidence also indicated that John had voluntarily resigned from his job. Tammy testified that in December 2015, John sent her a text message informing her that he had quit his job. John also admitted to sending a text message to a superior at the company which stated, "I'm done." John disputed that this text message proved he resigned from his employment. He testified that when he said, "I'm done," he meant that he was done arguing about the new compensation package. However, John also testified that shortly after sending this text message, his employment was terminated.

After his employment with the company ended, John accepted a job with a different local sporting goods dealer as a sales person. John started this job at the end of January 2016, almost immediately after he had signed the separation agreement. His starting salary was $48,000 plus an opportunity to earn limited commissions. However, while employed at the new job, John continued to research and interview for other, more profitable employment opportunities. He testified that he researched at least 50 sales jobs, even those that were located out of state. He interviewed with three or four "major" companies, but was not hired. John testified that he wanted to find a job where he was again able to earn around $140,000.

At the end of 2016, John's employment with the local sporting goods dealer was terminated. According to the company, he was terminated for not meeting sales goals and objectives. According to John, he was terminated because he was distracted from his duties because he was looking for a better job.

On January 30, 2017, John started a new job as a sales person for a pet food company. He testified that he works approximately 70 hours per week and documentation from his employer indicated that he earns a salary of $60,000 per year. In addition, he earns a 2-percent commission on any new customer sales. In 2017, John's gross income totaled $67,689.

John testified that as a result of his current annual income being only half of what it was at the time the decree of dissolution was entered, he is struggling financially. He indicated that his monthly expenses total almost $6,000 per month, and that there is no "leftover" income at the end of each month. In fact, John testified that each month, he earns less than his expenses cost. John explained that, despite his financial struggles, he has continued to try to pay for things for the

parties' two children, including paying for their older son's college tuition and for both boys' car insurance, registration, and maintenance. John testified that he is considering selling the marital home to save money, but that in order to do so, he must spend money to prepare the house. Recently, John has had to pay for expensive household repairs, including, fixing a mold problem and a broken pipe. John testified that he had been unable to pay any money to his attorney for the modification proceedings.

John admitted that he has fallen behind on his child support and alimony payments. According to documentation, at the time of the modification hearing, John was over $10,000 in arrears in his alimony payments and over $3,500 in arrears in his child support payments, even after his income had been garnished. John testified that he simply does not have the means to pay $1,000 per month in child support and $1,500 per month in alimony. He asked the court to reduce his child support payment to $727 per month and to reduce or eliminate his alimony obligation.

There was evidence presented at trial to demonstrate that John exaggerated his financial problems during his trial testimony. Discovery documents filed by John indicated that in July 2017, a month after John filed his complaint for modification, he had $51,560 in his savings account and $9,111 in his checking account. John countered this evidence with testimony that by the time of the modification trial, he had only $3,400 in his savings account and $4,300 in his checking account. However, he did not provide documentation to prove these amounts. Tammy also demonstrated that in 2017, John had $432,000 in a retirement account and continued to contribute 5 percent of his monthly income to a 401K plan. There was evidence that John's girlfriend lives in his home with him and contributes to many of his monthly expenses. In fact, his girlfriend provided John with a vehicle to drive and recently bought all new appliances for John's home.

At the modification trial, Tammy testified briefly about her own current financial circumstances. She indicated that, although she had changed jobs on two occasions since the entry of the decree of dissolution in April 2015, her income had remained relatively stable. She also indicated that, recently, because John had "cut back" on his monthly child support and alimony payments, she did not have enough income to cover her monthly expenses. Tammy testified that she relied on the monthly payments from John to assist her in paying her expenses. Tammy explained that she had recently looked into selling her house to find a cheaper living situation, but she was ultimately unable to find something that would save her a significant amount of her monthly income. She then decided to refinance her current home in order to reduce her monthly expenditures. Tammy also testified that she was paying for the sporting expenses for the parties' youngest son, even though John had agreed to assume that responsibility in the decree.

Following the trial, the district court entered an order denying John's complaint to modify his child support and alimony obligations. The court noted that "[t]he terms of the Decree were negotiated." In addition, the court specifically found that John had "voluntarily resigned from a company where, had he stayed, his salary would have been $90,950.00 with a target compensation level of $107,000." As a result of John's choice to terminate his employment, the court imputed income of $107,000 per year to John. While the imputed income was approximately $33,000 less than what John was earning at the time of the decree of dissolution, a new child support calculation revealed that John's child support obligation using $107,000 as his annual income would not represent a 10-percent change from the child support obligation ordered in the decree.

Additionally, the district court found that John has "sufficient income to meet his living expenses and to pay the alimony obligation he negotiated."

John appeals from the district court's order.

ASSIGNMENTS OF ERROR

On appeal, John assigns three errors, which we consolidate to two errors for our review. Summarized, John asserts that the district court erred in denying both his request to modify his child support obligation and his request to modify his alimony obligation, based upon the district court's decision to impute to John an annual income of $107,000.

STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018).

ANALYSIS

On appeal, John asserts that the district court erred in denying his complaint to modify child support and alimony. He contends that he sufficiently demonstrated that a material change in circumstances had occurred since the entry of the April 2015 decree because his income had decreased by more than 50 percent and that such a change in his financial circumstances warranted a reduction in both his child support and alimony obligations. John also contends that the change in his income was outside of his control because his "unrefuted testimony" proved he was terminated from the job he held at the time the decree was entered. Brief for appellant at 10. Upon our review of the record, we find no abuse of discretion in the district court's decision to deny John's complaint to modify. The evidence presented at the modification proceedings supports the district court's factual finding that John voluntarily resigned from his employment, thus, forfeiting an annual salary of $107,000. The court did not err in imputing this income to John for purposes of determining his child support and alimony obligations.

*Child Support.*

A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Id.* But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child. *Incontro v. Jacobs*,

277 Neb. 275, 761 N.W.2d 551 (2009). The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby. *Fetherkile v. Fetherkile, supra*.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Fetherkile v. Fetherkile, supra*. According to the guidelines, "If applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources." Neb. Ct. R. § 4-204 (rev. 2016). As such, in determining the amount of child support a parent is obligated to pay, parental earning capacity is a considered factor. See, Neb. Rev. Stat. § 42-364(4) (Reissue 2016); *Incontro v. Jacobs, supra*. It is invariably concluded that a reduction in child support is not warranted when an obligor parent's financial position diminishes due to his or her own voluntary wastage or dissipation of his or her talents and assets and a reduction in child support would seriously impair the needs of the children. *Incontro v. Jacobs, supra*.

Here, the district court utilized its calculation of John's earning capacity, rather than John's current actual income, when determining whether a reduction in John's child support obligation was warranted. The court determined that John had "voluntarily resigned from a company where, had he stayed, his salary would have been $90,950.00 with a target compensation level of $107,000." Because the court found that John had willingly forfeited the opportunity to earn $107,000 annually at a job where he had been excelling, it decided to impute to John an earning capacity of $107,000. The court recognized that John was earning more than $107,000 at the time the decree was entered. However, when the court recalculated John's child support obligation using $107,000 as his annual income, it determined that his child support would be $1,086 per month, or $86 more per month than he is paying under the original decree. The court's child support worksheet was not included in our record. However, the court determined that because the new calculation "does not represent a 10% change from [John]'s current obligation, [his] request for a reduction in child support should be denied." See *Collins v. Collins*, 19 Neb. App. 529, 808 N.W.2d 905 (2012) (explaining that according to child support guidelines, rebuttable presumption establishing material change of circumstances occurs when application of guidelines results in variation by 10 percent or more of current child support obligation).

On appeal, John contends that the district court erred in imputing to him an annual income of $107,000 for purposes of its child support calculation, rather than utilizing his actual annual income of $60,000. John asserts that he affirmatively testified at trial that he did not voluntarily resign his position, but that he was terminated, involuntarily, by the company. And that, as such, he did not have control over his drastic change in financial circumstances. While we acknowledge John's testimony that he was terminated by his employer, we also must acknowledge the conflicting evidence presented at the modification hearing regarding the circumstances of John leaving his employment.

Perhaps the most compelling evidence concerning the circumstances of John leaving his employment is the separation agreement he signed in January 2016. This separation agreement clearly states that John voluntarily resigned his position from the company. John indicated his

acknowledgement and understanding of this assertion when he signed the agreement. While the agreement does provide John with a severance package, in exchange it requires John not to act on any claims he may have against the company and to commit to a non-disclosure agreement. Additionally, Tammy testified at trial that John indicated to her that he had quit his job with the company. John admitted to being upset by the new compensation plan, to discussing his disagreement with the plan with his employers, and, ultimately to sending a text to a superior, just prior to his termination, which stated, "I'm done."

Given the district court's factual finding that John voluntarily resigned from his position, the court clearly found John's testimony that the company terminated his employment to not be credible and the evidence indicating that he did resign to be credible. We defer to the trial court's determinations of witness' credibility. See *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002) (where evidence is in conflict on material issue of fact, appellate court considers and may give weight to fact that trial judge heard and observed witnesses and accepted one version of facts rather than another).

Because the district court found that John voluntarily resigned from his employment, we cannot say that the court abused its discretion in imputing to him an annual earning capacity of $107,000. John made a decision to forfeit a salary of $107,000 to pursue a different employment opportunity. These facts indicate that John's income decreased due to his own personal wishes not as a result of unfavorable or adverse conditions in the economy, his health, or other circumstances that would affect his earning capacity. While the amount of John's income has changed since the entry of the original child support order, he has failed to prove a significant change in his earning capacity that would warrant a downward modification to his child support obligation. And, as far as the record reflects, the needs of his remaining minor child remain the same as they existed when the district court entered the original decree of dissolution. For these reasons, the district court did not abuse its discretion when it declined to modify John's child support payments based upon John's change in income.

We note that in the district court's order it specifically pointed out that the terms of the parties' decree of dissolution, including the amount of child support to be paid by John, was negotiated and agreed to by the parties. We further note that in agreeing that John should pay $1,000 per month in child support both when there were two minor children and when there was only one minor child, the parties agreed to a deviation from the child support guidelines. Had John been ordered to pay child support in accordance with the guidelines, he would have been paying more than $1,000 per month as long as both of the children remained minors, and would be paying less than $1,000 now that only one of his children remains a minor. Stated another way, John received a benefit from the parties' agreement when both of his children remained minors. Now that only one of the children remains a minor, Tammy is receiving a benefit from the parties' agreement. It seems inequitable for John to ask for a reduction in child support now, after he received the benefit of his bargain. Nonetheless, we affirm the district court's order denying John's request for a reduction in child support based upon the court's finding that John voluntarily resigned from his employment and, as a result, has an earning capacity of $107,000 per year.

*Alimony.*

John also alleges that the district court erred in denying his complaint to modify alimony. Pursuant to Neb. Rev. Stat. § 42-365 (Reissue 2016), alimony orders may be modified or revoked for good cause shown. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. *Id*. Good cause is demonstrated by a material change in circumstances, but any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order. *Id*. The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award. *Id*.

"It is well established that a 'material change in circumstances' in modification of child support cases is analogous to the 'good cause' standard articulated for modification of alimony." *Grahovac v. Grahovac*, 12 Neb. App. 585, 592, 680 N.W.2d 616, 623 (2004). See, also. *Lambert v. Lambert*, 9 Neb. App. 661, 617 N.W.2d 645 (2000). We have already determined that John's change in financial circumstances did not constitute a material change in circumstances for child support purposes because he voluntarily resigned from his position. Our analysis in that regard applies with equal force in determining whether John's alimony obligation should be reduced or eliminated. When we impute an annual income of $107,000 to John, it is clear that he has sufficient income to meet his living expenses and to pay the alimony obligation that he agreed to in the decree of dissolution. We affirm the district court's decision to deny John's request to modify or eliminate his alimony obligation.

CONCLUSION

We conclude that the district court did not abuse its discretion in denying John's complaint to modify child support and alimony. Accordingly, the order of the district court is affirmed.

AFFIRMED.