IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


SMITH V. MCCRIGHT


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


AMANDA J. SMITH, APPELLEE,

V.

NICHOLAS M. MCCRIGHT, APPELLANT.


Filed June 21, 2022.    No. A-21-602.


Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed.

John A. Kinney, Jill M. Mason, and Samantha M. Robb, of Kinney Mason, P.C., L.L.O., for appellant.

Margaret A. Mark and John A. McWilliams, of Gross & Welch, P.C., L.L.O., for appellee.


MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

INTRODUCTION

Nicholas M. McCright appeals from an order of the district court for Douglas County modifying the decree of paternity related to his minor children, whom he shares with Amanda J. Smith. McCright challenges the district court's determination of Smith's child support obligation. Because we find no abuse of discretion, we affirm the order of modification.

STATEMENT OF FACTS

*Procedural History.*

McCright and Smith are the biological parents of four minor children; born in 2008, 2015, 2016, and 2017. On October 17, 2019, the district court entered a decree of paternity, which awarded Smith custody of the children subject to McCright's parenting time. The decree also ordered Smith to "continue therapy and treatment for bi-polar, depression and anxiety until such

- 1 -

time as the provider of said services and/or treatment released her." The child support worksheet attached to the decree listed McCright's monthly income as $19,024, and Smith's as $6,067. The decree ordered McCright to pay $2,250 per month in child support, with subsequent adjustments when each child reached the age of majority. McCright was also ordered to maintain health insurance on behalf of the children and to contribute 74 percent of any of the children's non-reimbursed healthcare expenses in excess of $480 per child each year. Smith was ordered to contribute the first $480 in non-reimbursed healthcare expenses per child each year.

*Complaint for Modification.*

On March 27, 2020, McCright filed a complaint for modification of decree. McCright alleged that Smith was facing criminal charges, her employment and living arrangements were not in the best interests of the children, and McCright's income had decreased since the original decree of paternity. McCright requested that he be awarded custody of the minor children, and that his child support obligation be immediately terminated.

*Trial.*

A trial on the matter occurred on May 24, 2021. Prior to trial, McCright and Smith agreed on a custody arrangement and parenting plan, which granted McCright custody of the children, subject to Smith's parenting time. The following evidence was adduced at trial regarding the issue of child support.

In April 2020, the Social Security Administration awarded Smith monthly disability benefits. Smith testified that her disability benefits were based on her bipolar disorder diagnosis. Smith also noted that the Social Security Administration had determined that she was unable to work due to her disability. A letter submitted into evidence from the Social Security Administration shows that Smith's monthly disability benefit is $1,215.50.

At the time of trial, Smith was facing criminal charges for a second offense of driving under the influence following an arrest in December 2020. At the time of her arrest, Smith was driving with three of her children, and had two open containers of alcohol inside of her vehicle. Smith had previously been convicted of driving under the influence in October 2018.

Smith testified that she had been sober for 6 months and was enrolled in a long-term, residential treatment facility. In January 2021, Smith was ordered by the court in her criminal case to complete the residential treatment program. She described the programming at the facility, which included seeing a therapist weekly, attending Alcoholics Anonymous meetings, and participating in daily classes from 8 a.m. until 2:30 p.m.

Smith anticipated being sentenced in July or August 2021 to 23 days in jail. Following her release, Smith planned to transition to a sober living home. Smith also acknowledged, upon the district court's specific questioning, that she would likely be ordered to continue participating in treatment following the completion of her jail sentence, as well as other potential conditions of probation.

Smith has an associate degree in nursing and is a licensed registered nurse. Smith was last employed as a nurse in 2018, and she testified that she never earned the gross income of over $6,000 per month reflected in the 2019 decree of paternity, as that amount was contingent on a new position that Smith was going to start. Smith anticipated that she would be subject to a

professional disciplinary action following sentencing for her criminal charges although there was no pending disciplinary action against Smith's nursing license at the time of trial. Smith also expressed that she enjoys being a nurse and plans to eventually return to the field.

A condition of Smith's residential treatment program was having a job and at the time of trial, she had "just started a job as a waitress." Smith had committed to 26 hours of work per week, and she would earn $2.13 per hour, plus tips. However, no evidence regarding her anticipated earnings as a waitress was submitted to the district court.

Finally, Smith testified that her mental health would be negatively affected if she were to leave her treatment program and return to nursing. She observed that prioritizing her recovery was in the best interests of her children.

Upon cross-examination, Smith conceded that the 2019 decree of paternity ordered that she continue therapy and treatment for her bipolar disorder, and that there had been times since the entry of the decree that she had not taken her medication "appropriately." When asked if Smith had not seen her therapist for months at a time she responded, "I want to guess, probably, yes."

McCright testified that Smith is "perfectly functioning" when she is properly medicated and following the advice of her doctor. McCright believed that Smith's "addiction issues" were a cause of her medication noncompliance.

The parties also submitted information to the district court regarding their respective incomes. McCright offered an income report by a certified public accountant, which calculated his monthly net income as $8,870. McCright also offered information regarding his health insurance expenses, showing that he pays $593.38 for the children's health insurance premium and $297.90 for his personal health insurance premium. Smith offered a child support worksheet into evidence, incorporating McCright's monthly income and health insurance costs, and showing her gross unearned taxable income as $1,215.50, and her monthly net income as $1,154.72, after a $60.78 deduction for her health insurance premium.

*Order for Modification.*

On June 22, 2021, the district court entered an order for modification. The court did not provide factual findings beyond noting that it had accepted Smith's child support calculation and had attached her worksheet to its order.

The court ordered Smith to pay $115 in child support per month. The court also found that McCright was solely responsible for the children's healthcare expenses not covered by insurance, as ordering Smith to contribute to such expenses would reduce her net income below the basic subsistence limitation set forth in the Guidelines. Finally, the court did not order Smith to contribute to child care expenses, again, because such an order would reduce Smith's net income below the Guideline's basic subsistence limitation.

## ASSIGNMENTS OF ERROR

McCright assigns, consolidated and restated, that the district erred by (1) failing to find that Smith suffered a reduction to her income by her own fault, as she had neglected to properly treat her mental illness; (2) calculating Smith's child support obligation using her disability income rather than her earning capacity as a nurse or waitress; (3) failing to order Smith to contribute to

child care, uninsured medical, and health insurance expenses; and (4) failing to provide a factual basis.

STANDARD OF REVIEW

Modification of child support is entrusted to the discretion of the trial court. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Id*.

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021).

ANALYSIS

*Alleged Wastage.*

McCright alleges that the trial court erred by failing to find that Smith suffered a reduction in her income by her own fault. McCright argues that Smith's alcohol abuse and subsequent criminal charges were the result of Smith refusing to consistently engage in therapy and take medication for her mental illness. He thus contends that Smith's "inability on her part to work as a nurse was her fault or constituted her voluntary wastage of her talents because she chose to use alcohol." Brief for appellant at 10.

In the context of child support and alimony modification, a complaint for modification will be denied if the change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets. *Hodgen v. Hodgen*, 30 Neb. App. 456, 970 N.W.2d 782 (2022). McCright's brief on appeal notes two cases in which we have addressed the issue of whether allegations of changed employment status and reduced income that stem from employment misconduct may serve as grounds for modification of child support and alimony obligations.

In *Lambert v. Lambert*, 9 Neb. App. 661, 617 N.W.2d 645 (2000), the former husband failed multiple drug tests required by his employer, declined treatment from his employer's Employee Assistance Program, and was thereafter terminated from his employment. He sought modification of his child support and alimony, and the trial court reduced his child support and alimony obligations. This court concluded that the district court abused its discretion in modifying and reducing the former husband's support obligations because he "was essentially fired because he chose to use marijuana" and "did this knowing that it would put his livelihood in jeopardy and . . . affect his ability to meet his court-ordered financial obligations." *Id*. at 668, 617 N.W.2d at 650. Due to this fault, we found that his change in employment status and income could not be a material change in circumstances or good cause, and we reversed the decision of the district court.

Similarly, in *Grahovac v. Grahovac*, 12 Neb. App. 585, 680 N.W.2d 616 (2004), the former husband resigned from his employment and incurred a reduction to his income as a result. He subsequently motioned the trial court to reduce his child support and alimony obligations based upon that reduction in his income, and the district court granted a reduction to both obligations. On appeal, this court found the circumstances to be similar to those in *Lambert v. Lambert, supra*, and determined that the record demonstrated his "resignation or 'early retirement,' which reduced his income, was due to ... his alcoholism and his refusal to secure effective treatment." *Grahovac*

- 4 -

*v. Grahovac*, 12 Neb. App. 585, 590, 680 N.W.2d 616, 622 (2004). This court concluded that because the ex-husband's employment "ended because of his continued drinking" and "not from good cause," he was not entitled to reductions of his support obligations on that basis. *Id*. at 591, 680 N.W.2d at 622.

While we are mindful of the precedent that guides our review, we find the present case distinguishable from those relied upon by McCright. In both *Lambert v. Lambert, supra* and *Grahovac v. Grahovac, supra*, the court concluded that the fathers had committed voluntary wastage due to both their drug and alcohol usage *as well as* their refusal to secure effective treatment.

Smith testified at trial that she had, for a period, consumed alcohol daily and had twice been arrested for driving under the influence. However, in January 2021, Smith was ordered to complete a residential treatment program. Smith was actively participating in the treatment program at the time of trial, which included weekly therapy sessions, Alcoholics Anonymous meetings, and daily programing. Smith also testified that after serving her sentence, she planned to transition to a sober living house in an effort to maintain her sobriety.

Further, though the district court allowed McCright to offer lay testimony regarding the connection between Smith's failure to engage in therapy or medication for her mental illness and her increased alcohol use, the court was permitted to give McCright's opinion on the causality of Smith's alcohol use little weight. See *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020) (where credible evidence is in conflict on material issue of fact, appellate court considers, and may give weight to, fact that trial court heard and observed witnesses and accepted one version of facts rather than another). McCright did not present any evidence from a medical expert discussing the connection between improperly treating a mental illness and increased alcohol use. Additionally, the Social Security Administration concluded that Smith was unable to work due to a disability, specifically her mental illness. Therefore, the court did not abuse its discretion in failing to find Smith's reduction in income was due to her own fault.

*Income Determination and Earning Capacity.*

McCright argues that the district court erred in calculating Smith's child support obligation without using her earning capacity. McCright argues that, at the time of trial, Smith still had an active nursing license and the court should have used her earning capacity as a nurse, similar to her income at the time of the original decree. Although Smith testified that she was anticipating professional disciplinary action due to her criminal charges, McCright asserts such testimony was "speculative and self-serving." Brief for appellant at 12. Alternatively, McCright contends that the court should have considered that Smith was able to work as a waitress as a basis for finding that Smith could work 40-hours a week, earning minimum wage.

The main principle behind the Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. *Vanderveer v. Vanderveer*, 310 Neb. 196, 964 N.W.2d 694 (2021). When determining total income under the Guidelines, all income from all sources is to be included except for those incomes specifically excluded. *Id*. When determining total income under the Guidelines, a court should not include income that is speculative in nature and over which the party has little or no control. *Id*. But when the evidence shows the party earns or can reasonably expect to earn a certain amount of income

on a regular basis, a rebuttable presumption of including such income arises, and to rebut that presumption, the party must produce sufficient evidence to show that including the income would not result in a fair and equitable child support order. *Id*. The guidelines provide that if applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as residence, health, and employment barriers, including a criminal record. See Neb. Ct. R. § 4-204(E) (rev. 2020).

Here, the evidence at trial supports a determination that Smith's earning capacity was limited to her monthly disability benefits. Smith's earning capacity was restricted by her pending criminal charges, active treatment efforts, impending jail sentence, and prospective probation requirements following her sentencing. While Smith had recently begun working as a waitress, given the demands of her court-ordered treatment program and her upcoming sentencing, we do not find Smith's work as a waitress to evidence that she had the capacity to work 40 hours a week; whether as a nurse or for minimum wage. We acknowledge that Smith was ordered to have employment as a part of her treatment program, however, she had not yet established any earnings from the waitressing position and any such earnings were entirely speculative at the time of trial. See also, Nebraska Child Support Guidelines § 4-217 (financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months establishes rebuttable presumption of material change of circumstances).

Although no disciplinary action had yet been taken against Smith's nursing license at the time of trial, she believed that such action would be forthcoming, which testimony the district court apparently found credible. Smith testified that her mental health would be negatively affected if she left her treatment program and returned to nursing. Again, we note that the Social Security Administration conducted an investigation and later determined that Smith was unable to work and was eligible for disability payments due to her bipolar disorder diagnosis. The district court was permitted to consider Smith's health as a factor in its analysis of her earning capacity.

Given Smith's testimony at trial and the applicable § 4-204(E) factors, we cannot say that the district court abused its discretion in using Smith's disability benefits rather than her earning capacity as a nurse or minimum wage worker when calculating her child support obligation. This assignment of error fails.

*Additional Expenses.*

McCright assigns that the district court erred when it failed to order that Smith contribute to any of the work-related day care expenses, uninsured medical expenses, or health insurance premiums for the children. However, he fails to argue this assignment substantively in his brief. Absent plain error, an appellate court considers only an appellant's claimed errors that the appellant specifically assigns in a separate "assignment of error" section of the brief and correspondingly argues in the argument section. *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). We find no plain error in the district court's failure to order Smith to contribute to these expenses.

As we determined above, the district court did not abuse its discretion when it considered only Smith's monthly disability benefits to determine her child support obligation. The Guidelines state that "a minimum monthly support of $50, or 10 percent of the obligor's net income, whichever is greater, per month should be set." See Neb. Ct. R. § 4-209 (rev. 2020). The court

utilized Smith's monthly net income of $1,154.72, 10 percent of which resulted in a monthly obligation of $115, in accordance with the minimum amount of child support required by the Guidelines.

The Guidelines also set forth a basic subsistence limitation. The Guidelines state that a "parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $1,133 net monthly for one person," with an exception for the required minimum support as defined in § 4-209. See Neb. Ct. R. § 4-218 (rev. 2020).

Smith's required minimum obligation of $115 reduces her monthly income of $1,154.72 to $1,039.72. Thus, ordering that Smith contribute any amount to child care or medical expenses would have placed Smith below the minimum subsistence level of $1,133, as set forth in the Guidelines. See *id*. The district court did not plainly err in not ordering Smith to contribute to these expenses.

*Factual Basis.*

Finally, McCright alleges that the district court failed to provide a factual basis to rebut the presumptive application of the Guidelines, as the court did not consider Smith's earning capacity at the time of trial. He argues that the court should be required to cite the facts it relied upon in reaching the conclusion that the application of the Guidelines were rebutted.

Neb. Ct. R. § 4-203 (rev. 2020) requires the court to make specific findings only if the court approves a stipulated agreement for child support which deviates from the Guidelines. Here, the parties did not submit a stipulated agreement for child support to the district court for approval and, as we found above, the district court's order regarding Smith's child support obligation was in accordance with the applicable provisions of the Guidelines. Given that the district court did not approve a stipulated agreement and did not deviate from the Guidelines, the court was not required to provide specific findings in its order.

Furthermore, in the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party. See *Schroeder v. Schroeder*, 26 Neb. App. 227, 918 N.W.2d 323 (2018). Because there was no request by either party for the court to enter specific findings, the district court did not err in failing to do so.

## CONCLUSION

We find that the district court did not abuse its discretion by utilizing Smith's disability benefits to determine her child support obligation, in accordance with the Guidelines. Therefore, the district court's modification order is affirmed.

AFFIRMED.